UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RICHARD JAMES WOODRASKA,<br><br>Plaintiff,<br><br>vs.<br><br>DARIN YOUNG, CHIEF WARDEN, IN HIS OFFICIAL CAPACITY; MIKE LEIDHOLT, CABINET SECRETARY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JEREMY BAKER, SERGEANT, IN HIS INDIVIDUAL CAPACITY; Z. LENTSCH, SERGEANT, IN HIS INDIVIDUAL CAPACITY; AND TAYLOR YOST, SCO, IN HIS INDIVIDUAL CAPACITY,<br><br>Defendants. | 4:21-CV-04120-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Richard James Woodraska, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983, alleging that the Defendants used excessive force against him during an altercation at the South Dakota State Penitentiary. Doc. 1. This Court granted Woodraska leave to proceed in forma pauperis and screened his complaint, dismissing his claims against defendants Darin Young and Mike Leidholt and directing service of his complaint upon defendants Jeremy Baker, Z. Lentsch, and Taylor Yost. Doc. 7. The Defendants have filed a motion for summary judgment. Doc. 15. Woodraska has also filed a motion for appointment of counsel and a motion to amend his complaint. Docs. 14, 30. For the reasons explained below, this Court grants the Defendants' motion for summary judgment.

I.      Facts

Woodraska alleges that on February 10, 2021, he was assaulted by Baker, Lentsch, and Yost. Doc. 1 at 8-9. He alleges that Baker broke his leg and that Lentsch and Yost kneed him, punched him, and twisted his leg after it was injured. Id. at 9. He also alleges that Yost told the other two to kill him and that one of the officers placed his knee on Woodraska's neck, causing him to pass out. Id. Woodraska claims that Lentsch slammed his head against a wall. Id. at 7. He claims that the assault caused bruising to his face, and he required surgery for his broken leg. Id. at 9. He also claims that he struggles with mental health issues as a result of the assault. Id. In documentation attached to his complaint, Woodraska alleges that he was sprayed with five cans of pepper spray and that he was not taken to the hospital following his injuries. Doc. 1-1 at 2.

The Defendants filed a statement of undisputed material facts, six affidavits, and a memorandum in support of their motion for summary judgment. Docs. 16, 17, 18, 19, 20, 21, 22, 23. The Defendants also filed a motion for a protective order staying discovery, a memorandum in support of that motion, and a motion to seal exhibits. Docs. 24, 25, 26. This Court granted the Defendants' motion for a protective order and motion to seal exhibits on November 17, 2021. Doc. 27. Over three months later, Woodraska filed an objection to the motion for a protective order and an objection to the affidavit of Matthew Van Otterloo, a South Dakota State Penitentiary Correctional Officer who witnessed the altercation in question. *See* Docs. 28, 29. In his objection to Van Otterloo's affidavit, Woodraska alleges that the "lies in [Van Otterloo's] affidavid [sic] . . . will become apparent upon viewing of camera footage." Doc. 29 at 1. Specifically, Woodraska claims that he never "shoved or pushed" Van Otterloo. Id. Other than this objection, Woodraska did not respond to the Defendants' motion for summary judgment.

Under Local Rule 56.1.B., a party opposing summary judgment "must respond to each numbered paragraph in the moving party's statement of material facts with a separately

numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1.B. Woodraska has failed to respond to the Defendants' statement of undisputed material facts. Thus, under Local Rule 56.1.D, all material facts set forth in the Defendants' statement of undisputed material facts will be deemed admitted. D.S.D. Civ. LR 56.1.D. This Court will draw facts primarily from that statement of undisputed material facts.

Baker and Lentsch went to collect a urine sample from Woodraska in the West Holding Cell on the evening of February 10, 2021. See Doc. 23 ¶ 12 (citations omitted). Woodraska informed West Hall Officers that he was ready to produce a sample after "yelling at the top of his lungs at staff." Id. ¶ 14 (quoting Doc. 16-8 at 1). Baker, Lentsch, and Van Otterloo entered and began uncuffing Woodraska for the urine sample, at which point Woodraska ran out of his cell. Id. ¶ 16 (citations omitted). Woodraska then attempted to lock Baker and Lentsch inside the cell. Id. ¶ 17 (citations omitted). Woodraska next grabbed a nearby broomstick, swung it at the officers, and "broke the end of the broom stick off by swinging it against the wall." Id. ¶¶ 18-19 (quoting Doc. 16-1 at 2). Officer Stanley Knode, who was present at the time, called in a "triple code red for an inmate with a weapon." Id. ¶ 22 (quoting Doc. 16-8 at 1). Woodraska was ordered to drop the weapon, but he did not do so. Id. ¶ 23 (citations omitted). Officers then sprayed Woodraska in the face with OC spray. Id. ¶ 24 (citations omitted).

At this point, Baker grabbed Woodraska by his upper torso and "brought him to the ground[.]" Id. ¶¶ 26-27 (quoting Doc. 18 ¶ 18). During this struggle, Woodraska and Baker "bumped into a nearby ice machine" and fell to the ground. Id. ¶ 29 (quoting Doc. 18 ¶ 21). Woodraska continued to resist despite several orders to stop doing so, and Yost "deliver[ed] an elbow strike to [Woodraska's] torso." Id. ¶ 36 (quoting 16-7 at 1). Yost was then able to control Woodraska's arms and handcuff him. Id. ¶ 37 (citations omitted). The officers involved all deny

that anyone placed a knee on Woodraska's neck and caused him to pass out. Id. ¶ 38 (citations omitted). The Defendants also deny that they applied knee strikes to Woodraska's head or face or punched him in his head or face. Id. ¶¶ 40-41 (citations omitted).

On February 16, 2021, Woodraska spoke with AMG Orthopedics and Sports Medicine staff about the incident and admitted that "he was instigated." Id. ¶ 47 (quoting Doc. 16-30 at 1). He "admit[ted] that he took several swings at staff with a weapon" at a Restrictive Housing Hearing on February 24, 2021. Id. ¶ 48 (alteration in original) (quoting Doc. 16-13 at 3). During his Disciplinary Hearing Officer hearing, Woodraska admitted that he threatened a non-inmate with bodily harm and possessed a weapon. Id. ¶ 49 (citations omitted).

Woodraska was seen after the melee by Health Services on February 11, 2021, and he told nursing staff that Baker "landed on his right knee" during the fight. Id. ¶¶ 31-32 (quoting Doc. 16-17 at 1). Woodraska was seen by Health Services twice following the incident, and he did not mention losing consciousness at either visit. Id. ¶ 39 (citations omitted). The photograph of Woodraska taken after the incident shows no injuries to his head or face and no bruising around the bridge of his nose. Id. ¶ 42 (citing Doc. 16-3). Woodraska also did not mention injuries to his head or face when seen by Health Services on February 10, 2021. Id. ¶ 43 (citations omitted). Although Woodraska complained of pain in his right knee on February 10, 2021, his knee showed no swelling or deformity and only slight bruising on that day, and the photograph taken of his knee that day shows no obvious injury. Id. ¶¶ 44-46 (citations omitted).

Health Services ordered x-rays for Woodraska's right knee on February 11, 2021, the day after the incident, because Woodraska continued to complain about pain in his knee, which had become "very swollen and painful to touch[.]" Id. ¶ 54 (quoting Doc. 16-17 at 1). The x-rays revealed a tibial plateau fracture. Id. ¶ 55 (citations omitted). Tibial plateau fractures such as the

4

one suffered by Woodraska are commonly caused by falls. Id. ¶¶ 33-34. Woodraska was told not to put weight on the leg and to avoid stairs, and nursing staff at the State Penitentiary called Dr. Sultana and were told to "call ortho triage in the morning." Id. ¶¶ 56-57 (quoting Doc. 16-20 at 1). On February 12, 2021, Dr. Krajca of AMG Orthopedics and Sports Medicine reviewed the imaging and determined that the injury did not require surgery. See id. ¶ 58 (citations omitted). Although Woodraska was not allowed crutches until he was no longer on safety watch because of his use of a broom as a weapon, he was provided a wheelchair for transport. Id. ¶¶ 61-62 (citations omitted).

At an appointment with AMG Orthopedics and Sports Medicine on February 16, 2021, Woodraska said that he had been "weightbearing on his right lower extremity." Id. ¶ 60 (quoting Doc. 16-30 at 1). Avera physicians determined at this time that Woodraska did need surgery for his knee. Id. ¶ 63 (citations omitted). Woodraska underwent surgery on February 17, 2021, and returned to the State Penitentiary that day. Id. ¶¶ 64-65 (citations omitted). Five days later, Woodraska was transported to the Emergency Department at Avera McKennan Hospital because of worsening pain and continued swelling in his right leg. Id. ¶¶ 66-67 (citations omitted). X-rays performed at that time "show[ed] good postoperative appearance[,]" and the attending physician concluded that Woodraska's condition could be related to his anxiety regarding his leg. Id. ¶¶ 69-70 (first alteration in original) (quoting Doc. 16-35 at 3).

Future visits by Woodraska to AMG Orthopedics and Sports Medicine on March 9, 2021, and April 20, 2021, showed that his knee was healing well. See id. ¶¶ 72-77. Woodraska performed strengthening exercises during physical therapy at the State Penitentiary in March and April 2021 and had no complaints other than fatigue. Id. ¶¶ 78-82. At a follow-up visit on June 22, 2021, AMG Orthopedics and Sports Medicine recommended Woodraska continue range of

motion and strengthening exercises. Id. ¶ 85 (citations omitted). Woodraska refused physical therapy three times during August 2021, at which point his physical therapy was discontinued. Id. ¶¶ 87-89 (citations omitted).

## II.     Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A), (B); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145-46 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in his pleading but "must set forth specific facts showing that there is a genuine issue for trial." Gacek, 666 F.3d at 1145-46 (citing Anderson, 477 U.S. at 256); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

## III.    Discussion

A.     **Eighth Amendment Excessive Force Claim**

The Defendants argue that they are entitled to qualified immunity on Woodraska's Eighth Amendment excessive force claim. Doc. 16 at 5-6. "On summary judgment, a defendant official is entitled to qualified immunity unless '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.' " Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (quoting Howard v. Kan City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)). Plaintiffs must establish both prongs to defeat qualified immunity. Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citing Nord v. Walsh County, 757 F.3d 734, 738 (8th Cir. 2014)). Courts may examine the prongs of a qualified immunity analysis in any order based on the circumstances of each case. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, the Defendants argue that Woodraska cannot demonstrate that a constitutional right has been violated. Doc. 16 at 5-6.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain[.]" Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In considering an Eighth Amendment claim for excessive force, the "core judicial inquiry . . . [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7).

> In evaluating whether the force was reasonable and in good faith, courts may consider the need for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted.

Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008).

The Defendants argue that the force used in this incident was not excessive because "Woodraska was creating a disturbance that presented an obvious threat to the safety of staff." Doc. 16 at 7 (citations omitted). The Defendants further argue that the force used was reasonable because of the threat presented and that the seriousness of the injury suffered by Woodraska was not foreseeable. Id. (citations omitted). Woodraska presents no evidence that the Defendants acted "intentionally, maliciously, and sadistically" other than the allegations made in his complaint. See Doc. 1 at 7. Rather, the evidence shows that Defendants acted reasonably and applied force "in a good-faith effort to restore discipline" as required by Wilkins. See 559 U.S. at 37. After Woodraska had tried to enclose officers in the cell and grabbed a broomstick to swing at officers, the Defendants used OC spray, grabbed Woodraska by the torso and brought him to the ground, and struck him in the chest with an elbow. Doc. 23 ¶¶ 17-19, 24, 26-27, 36. Although Woodraska was injured during the altercation,[1] the "extent of the injury inflicted" is only one factor to be considered under Walker. See 526 F.3d at 1188. The Defendants were justified in applying force because of the threat posed by Woodraska, and the force used was reasonable given that Woodraska was using a broken broomstick as a weapon. See Doc. 23 ¶¶ 18-20. Thus, the force used by the Defendants was not excessive, and the Defendants did not violate Woodraska's Eighth Amendment rights.

Woodraska also alleges that the Defendants failed to take him to the hospital after the incident. Doc. 1-1 at 2. To the extent that this allegation falls under Woodraska's excessive force claims, the Defendants argue that they had no medical training, were not medical staff, and were

---

[1] The Defendants also note that there is a question regarding when and how Woodraska sustained this injury. Doc. 16 at 17 n.3. Because the facts on summary judgment are viewed in the light most favorable to the non-moving party, this Court will assume that Woodraska's leg was broken during the altercation in question. See Matsushita Elec. Indus. Co., 475 U.S. at 587-88.

thus not responsible for decisions regarding Woodraska's medical treatment. Doc. 16 at 21. This allegation is better construed as an Eighth Amendment deliberate indifference to serious medical needs claim.

To succeed on a deliberate indifference claim, Woodraska must show that (1) he suffered "an objectively serious medical need" and (2) that the "defendant[s] actually knew of, but deliberately disregarded, such need." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009) (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2008)). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.' " Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "[A]ctual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious." Id. at 481-82 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)). "It is sufficient to show that the 'defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it.' " Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015) (quoting Farmer, 511 U.S. at 842). If such knowledge is shown, the plaintiff must also show the defendants " 'knew that their conduct was inappropriate in light of' the risk to the prisoner." Id. (quoting Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009)).

The plaintiff's burden to show deliberate indifference is greater than the burden to show negligence. McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012) (citing Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006)). The plaintiff must show that the defendant's mental state was "akin to criminal recklessness." Id. (quotation omitted). When evaluating whether a defendant displayed deliberate indifference to a plaintiff's serious medical needs, a court considers the

defendant's "actions in light of the information [the defendant] possessed at the time, the practical limitations of [the defendant's] position[,] and alternative courses of action that would have been apparent to an official in that position." Letterman, 789 F.3d at 862 (quoting Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000)). Examples of "[d]eliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Pietrafeso v. Lawrence County, 452 F.3d 978, 983 (8th Cir. 2006) (quoting Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995)). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) (quoting Alberson, 458 F.3d at 765).

Here, Woodraska alleges that he suffered an objectively serious medical need, but he makes no showing that the Defendants were aware of and deliberately indifferent to that need. See Doc. 1-1 at 2. Woodraska again fails to name defendants who were responsible for his medical care while in the State Penitentiary following the altercation. See Doc. 16 at 29. Further, although Woodraska was not taken to the hospital immediately after the incident, he had x-rays done the very next day, and AMG Orthopedics and Sports Medicine reviewed the imaging the day after that. Doc. 23 ¶ 54-55, 58. Ultimately, surgery was performed to repair Woodraska's broken leg a week after he was injured. Id. ¶¶ 64-65. Woodraska fails to allege that any named defendant was deliberately indifferent to his medical needs.

## IV.  Motion to Amend Complaint

Woodraska has filed a motion to amend his complaint, which the Defendants oppose. Docs. 30, 31. Specifically, he seeks to add retaliation claims and to add Van Otterloo as a defendant. Doc. 30. Because Woodraska filed his motion to amend more than 21 days after the Defendants served him their answer, he cannot amend his pleading as a matter of course under

Federal Rule of Civil Procedure 15(a)(1). See Docs. 13, 30. Instead, his amended pleading requires either the opposing party's consent or leave of the Court. Fed. R. Civ. P. 15(a)(2). Thus, because the Defendants oppose his motion to amend, Woodraska needs to have leave of the Court to amend his complaint.

The Court "may not ignore the [Federal] Rule [of Civil Procedure] 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits." United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 743 (8th Cir. 2014) (quoting United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 823-24 (8th Cir. 2009)). A court may deny a party leave to amend "when there are compelling reasons 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.' " Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003) (quoting Becker v. Univ. of Neb., 191 F.3d 904, 907-08 (8th Cir. 1999)). Under Local Rule 15.1, "any party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR 15.1. Woodraska did not attach a copy of the proposed amended pleading to his motion to amend and only briefly described the new claims and new party he seeks to add. See Doc. 30.

The Defendants argue that Woodraska's motion to amend his complaint should be denied because he failed to comply with the local rules. Doc. 31 at 4. Defendants further argue that granting Woodraska's motion would cause undue delay and prejudice. Id. at 5-6. Woodraska failed to respond to the Defendants' motion for summary judgment and instead filed his motion to amend over three months later. Docs. 15, 30. The Defendants argue that "Woodraska should not now be allowed to circumvent their properly supported Motion for Summary Judgment by

11

seeking leave to file an Amended Complaint." Doc. 31 at 5-6. The Defendants also argue that Woodraska could not have exhausted his administrative remedies for claims of retaliatory conduct that occurred after the start of this lawsuit. Id. at 6.

This Court denies Woodraska's motion to amend his complaint because it is not in compliance with the Local Rules and because allowing Woodraska to amend at this late stage in the proceedings would cause undue delay and prejudice the Defendants by requiring them to further litigate these claims after summary judgment has been granted.

## V. Conclusion and Order

Because Woodraska does not have a viable Eighth Amendment claim, the Defendants are entitled to summary judgment. It is hereby

ORDERED that the Defendants' Motion for Summary Judgment, Doc. 15, is granted. It is further

ORDERED that Woodraska's Motion to Amend Complaint, Doc. 30, is denied. It is finally

ORDERED that Woodraska's Motion for Appointment of Counsel, Doc. 14, is denied as moot.

DATED August 17, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE